**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ORWIN W. JAMES**

        **Plaintiff,**

     **v.**                                 **CIVIL ACTION NO. 2:05cv228**

**CITY OF CHESAPEAKE,**

        **Defendant.**

*MEMORANDUM OPINION & ORDER*

Before the Court is the Motion of City of Chesapeake ("Defendant") for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Defendant's "Motion in Limine to Preclude Plaintiff's Assertion of New Claims."   The Court conducted a hearing on this matter on December 12, 2005.  For the reasons set forth below, as well as the reasons stated in the record, Defendant's Motion for Summary Judgment is **GRANTED**.   Defendant's Motion in Limine is **DISMISSED** as **MOOT**.

## I.  FACTUAL AND PROCEDURAL HISTORY

For the purposes of these motions, the Court assumes the following facts to be true.[1]

**A. Plaintiff and Chesapeake Police Department**

Plaintiff is an African-American male who began working for the Chesapeake Police Department ("CPD") in September of 1996.  Plaintiff initially worked in the Uniform Patrol division of CPD.  Plaintiff was transferred to the Special Investigation Section ("SIS") in early

---

[1] Rule 56(B) of the Local Rules of the United States District Court for the Eastern District of Virginia requires that a motion for summary judgment include a list of undisputed facts.  The Court assumes that any facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief.

2001.  SIS specializes in vice and narcotics work and regularly undertakes undercover assignments.
In June of 2003, Plaintiff was transferred back to the Uniform Patrol division.

Plaintiff's first evaluation as an SIS officer was in March of 2002 by First Sergeant Jarrett
and Lieutenant Day ("Lt. Day").  He received a total rating of 3.40, which indicated a "solid
performance."  On or about May 9, 2002, Plaintiff complained to Lieutenant Tony Torres ("Lt.
Torres") that he was concerned with the lack of African-American detectives assigned to SIS.  A
few days after the conversation, Sergeant Thom approached Plaintiff and told him that Torres was
going to submit a formal complaint based on his discussion with Plaintiff.  On May 16, 2002,
Plaintiff was summoned to a meeting with Captain Nebb, Jarrett and Lt. Day to discuss the
conversation Plaintiff had with Torres.

On or around February 2003, Plaintiff made an internal race discrimination complaint
against Lt. Day alleging Lt. Day was discriminating against him because of his race.  Specifically,
Plaintiff believed that Lt. Day was frequently referring him to Internal Affairs and committing other
acts that tarnished Plaintiff's record.

Plaintiff's next evaluation was done in March of 2003 by Lt. Day.  Plaintiff received a 2.62
rating, which was in the high end of the "Improvement Required" rating.  After this evaluation,
Plaintiff complained to his chain of command, including Deputy Chief Louis J. Tayon, Jr., who is
white; Chief of Police Justice ("Chief"), who is white; and the City Manager, Dr. Clarence V.
Cuffee, who is black.  Ninety days later, Plaintiff was given a special evaluation by Sergeant Scott
Chambers.  Plaintiff received a 2.86 rating, which was in the lower end of the "Solid Performance"
rating.

Plaintiff has been investigated by Internal Affairs ("IA") on five different occasions.  In

2

2001, Plaintiff was investigated by IA for violating CPD's Virginia Criminal Information Network

("VCIN") policies by using another detective's login information to access VCIN for an

unauthorized purpose.  IA's investigation determined that the violation had been substantiated on

October 24, 2001, and Plaintiff was disciplined.  During the investigation, Plaintiff advised the

investigator that he felt Sergeant Forehand was a racist and did not properly train Plaintiff on the use

of VCIN.  After the investigation, the Defendant's Equal Employment Opportunity ("EEO")

specialist concluded that no violation of the Defendant's EEO policy occurred.

On October 4, 2001, IA received a complaint that Plaintiff had signed a court appearance

pay voucher for a day that he did not appear in court.  IA investigated the complaint, substantiated it

on February 28, 2002, and Plaintiff was disciplined.  On July 25, 2002, IA received a complaint

from an employee of the Defendant's garage that Plaintiff had used inappropriate language with

individuals working in the Defendant's garage.  IA investigated this complaint, it was substantiated

on September 27, 2002, and James was disciplined.  On or about November 19, 2002, Lieutenant

Douglas Draper initiated an IA complaint that Plaintiff failed to use sufficient care in handling a

piece of evidence after a search warrant was executed.  IA investigated this case, it was

substantiated on June 10, 2003, and Plaintiff was disciplined.  On October 23, 2002 and November

7, 2002, IA received complaints that Plaintiff had stolen money from people he had arrested.  IA

investigated the complaints and found the allegations of theft unsubstantiated.  However, it was

substantiated that Plaintiff failed to follow standard operating procedures and Plaintiff was

disciplined.

**B. CPD Promotion Procedures**

CPD conducts a competitive examination procedure in order to rank candidates for promotion.  The examination process, established by city regulation, results in a new eligibility list every other January 1st.  There are four components of the examination process: (1) a validated written exam accounts for fifty percent of a candidate's score; (2) an interview by a board of four representatives of other police department accounts for thirty percent of the candidate's score; (3) an officer's three most recent performance evaluations are then averaged and weighed as ten percent of the candidate's score; and (4) the Chief's evaluation of each candidate's suitability for promotion is factored in as the final ten percent of each candidate's score.

Once a promotional list is established, the Chief may deviate from the sequence of ranking on the promotional list where, during the twelve months preceding the proposed promotion effective date, a candidate has documented, unsatisfactory job performance or disciplinary action, and the Chief determines that another individual in the top three ranking positions is better qualified for the promotion.

The 2002 promotional list, effective on January 1, 2003 to December 31, 2004, resulted in a list of fifteen candidates for sergeant.  Plaintiff was ranked tenth (10th) on this list.  The Chief promoted the first group of sergeants, six individuals, off the list in March of 2003.  On February 25, 2004, Plaintiff received a letter from the Chief stating that he had decided not to promote Plaintiff. In March of 2004, the Chief promoted four more individuals off the sergeant promotion list.  At this time, he passed over Plaintiff to promote an individual behind him on the list, Stephanie Geoghegan. In April of 2004, the Chief made another promotion to sergeant, promoting Thomas Kullman over Plaintiff.  Eventually, every person on the list, except Plaintiff, was promoted to sergeant.

4

On March 30, 2004, Plaintiff filed an internal grievance complaining that the Chief did not give him another written notice that he would not be promoted, and that he was unfairly denied promotion. On May 6, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") stating that he was passed over for promotion as of February 25, 2004. In October of 2004, Plaintiff was again passed over for a promotion.

On November 4, 2004, a panel of city employees heard Plaintiff's grievance. The City Grievance Panel ("CGP") found that Plaintiff's "evaluations and Internal Investigations document a pattern of continued disregard for the Police Department's Standard Operating Procedures," and that Plaintiff "should not be in a role of leadership." (Def. Exh. JJ).

## C. Procedural Posture

On April 14, 2005, Plaintiff filed a Complaint against the Defendant in the Eastern District of Virginia alleging unlawful employment practices in violation of 42 U.S.C. § 1981 and Title VII. Plaintiff filed an Amended Complaint on May 4, 2005. On May 10, 2005, Defendant filed its Answer.

On October 21, 2005, Defendant filed the present Motion for Summary Judgment. Plaintiff filed his Reply Brief on November 2, 2005. On December 5, 2005, Defendant filed the present Motion in Limine.

On December 12, the Court held a hearing regarding the Motion for Summary Judgment and Motion in Limine. During the hearing, the Plaintiff withdrew his 42 U.S.C. § 1981 and Title VII racial discrimination claims. Plaintiff's only remaining claim is the Title VII retaliation claim. This matter is now ripe for determination by the Court.

## II.  LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin North Amer., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees of Mayland Cmty. Coll.*, 955 F.3d 924, 928 (4th Cir. 1992)) (stating that "summary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law").  In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, "summary judgment disposition remains appropriate if the [non-movant] cannot prevail as a matter of law."  *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996); *Ennis v. Nat. Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d, 55, 62 (4th Cir. 1995) (requiring the plaintiff point to "any circumstance "surrounding . . . discharge that credibly raises an inference of unlawful discrimination).

### III.  DISCUSSION

Defendant has filed a motion for summary judgment pursuant to Fed. R. Civ. Proc. 56.[2]

Defendant argues that summary judgment is appropriate because Plaintiff has failed to make a prima

facie case of retaliation under Title VII and has not provided any evidence of pretext.  Defendant

contends that the Plaintiff's Title VII claim must be analyzed as a case of pretextual discrimination

case.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Plaintiff argues that he has

produced direct evidence of discrimination and his Title VII claim should be analyzed under *Lee v.*

*Russell County Board of Education*, 684 F.2d 769 (11th Cir. 1982) (direct evidence of

discrimination can only be rebutted by "proving by a preponderance of the evidence that the same

decision would have been reached even absent the presence of [the discriminatory] factor.").

The Court is not persuaded that Plaintiff has produced direct evidence of discrimination.

"Direct evidence of discrimination is either direct evidence of a stated purpose to discriminate, or

circumstantial evidence of sufficient probative force to raise a genuine issue of material fact . . . [t]he

plaintiff's 'own naked opinion, without more,' is not enough to establish a genuine issue of fact."

*Demuren v. Old Dominion University*, 33 F.Supp. 2d 469, 479 (E.D.Va. 1999) (quoting *Goldberg v.*

*B. Green & Co*., 836 F.2d 845, 848 (4th Cir. 1988)).  Plaintiff alleges "numerous instances in which

Defendant 'counseled' Plaintiff for submitting his race discrimination complaint."  (Pl. Resp. Def.

---

[2]Defendant's Motion for Summary Judgment was based on several grounds.  However, because Plaintiff has withdrawn all issues but the Title VII retaliation claim, the Court will only address those issues raised by the Defendant pertaining to the Title VII retaliation claim.

Defendant argues that Plaintiff has failed to file an EEOC claim for several discrete acts and therefore cannot seek relief in federal court based on these acts.  The Court finds that Plaintiff timely filed an administrative charge reasonably related to the February 25, 2004 failure to promote.  *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (plaintiff's retaliation claim was sufficiently like or related to allegations contained in EEOC charge to warrant consideration in federal court without filing separate charge).  Therefore, there is no issue before the Court on timeliness.

Mot. Summ. Judg. at 8).  However, Plaintiff only verifies one instance of counseling.   (James Aff. ¶

6).  It also is not clear that this counseling was a product of discrimination.  This evidence does not

provide direct evidence of discrimination.  Accordingly, the Court will analyze Plaintiff's Title VII

claims as requiring pretextual discrimination under the *McDonnell Douglas* framework.  *McDonnell*

*Douglas*, 411 U.S. at 792.

Plaintiff alleges Defendant violated 42 U.S.C. § 2000e-3(a) by attempting to retaliate against

Plaintiff because he instituted a racial discrimination complaint.  Section 2000e-3(a) provides in part

that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of

his employees . . . because [the employee] has opposed any practice made an unlawful employment

practice by this subchapter . . .."  42 U.S.C. § 2000e-3(a).

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of proving a

prima facie case of discrimination by a preponderance of the evidence.  *McDonnell Douglas*, 411

U.S. at 802.  To state a prima facie claim for retaliation, a plaintiff must allege that (1) plaintiff

engaged in protected activity; (2) the employer acted adversely against the  plaintiff; (3) the

employer's adverse action was causally connected to the plaintiff's protected activity.  *Beall v.*

*Abbott Laboratories*, 130 F.3d 614, 619 (4th Cir. 1997) (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th

Cir. 1994)).  Once a prima facie case is established, the employer has the burden "to rebut the

presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Id*.  If

the employer can do so, the plaintiff must demonstrate that the employer's proffered reason is a

pretext for forbidden retaliation by proving "both that the reason was false and that discrimination

was the real reason for the challenged conduct." *Id*.

A.    **Prima Facie Case of Retaliation**

To establish a prima facie case of retaliation, element one requires that a plaintiff participated in a protected activity.  Title VII provides in part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  In the instant case, Plaintiff has filed an internal racial discrimination complaint with the CPD which satisfies the protected activity element. *Thompson v. Potomac Elec. Power. Co.,* 312 F.3d 645, 650 (4th Cir. 2002) (plaintiff engaged in protected activity by filing internal discrimination complaint).

The second element of a prima facie case of retaliation is that the employer acted adversely against the plaintiff.  Plaintiff has established this element because Defendant failed to promote him to the role of sergeant.  *Bryan v. Aiken Regional Medical Ctrs, Inc.*, 333 F.3d 536, 544 (4th Cir. 2003) ("It has long been clear that failure to promote an employee constitutes an adverse employment action for the purposes of § 2000e-3.").

The third element is that the employer's adverse action was casually connected to the plaintiff's protected activity.  Plaintiff alleges that Defendant engaged in a campaign to taint his record by frequently referring Plaintiff to IA and giving him poor performance ratings because of Plaintiff's discrimination complaint against Lt. Day.  After the discrimination complaint, Plaintiff's evaluations were significantly lower and IA complaints against Plaintiff increased.  Further, Defendant eventually failed to promote him.  A reasonable jury could find that the lower evaluations, IA complaints, and eventual failure to promote were related to Plaintiff's protected activity.  *Id.*  The Court finds that Plaintiff has established a prima facie case of retaliation.

**B.      Legitimate, Nonretaliatory Reasons**

To rebut Plaintiff's claim of retaliation, Defendant must articulate a "legitimate, nonretaliatory reason for its actions." *Beall*, 130 F.3d at 619.  Defendant provides evidence of Plaintiff's poor disciplinary record and evaluations as legitimate reasons for refusing to promote Plaintiff.  (Def. Br. Mot. For Summ. Judg. at 22).  Defendant argues that Plaintiff's own deposition testimony expresses the belief that the Chief, the primary decision maker for Defendant, has not treated him differently based on race.  (James Dep. at 184).  Defendant also points out that Plaintiff has not provided any evidence to support his position that he was unfairly referred to IA or received poor ratings. (Def. Br. Mot. For Summ. Judg. at 20).  The IA complaints were substantiated.  The Court finds that Defendant has successfully articulated a legitimate nonretaliatory reason for denying Plaintiff the promotions.  Therefore any presumption raised by Plaintiff's prima facie case "drops from the case." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255 n.10 (1981).

**C.      Genuine Issue of Material Fact on Pretext**

Because Defendant has produced evidence of a legitimate, nondiscriminatory reason for not promoting Plaintiff, Plaintiff must now show that Defendant's reasons were pretextual "by proving '*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct." *Beall*, 130 F.3d at 619 (quoting *Jiminez v. Mary Washington College,* 57 F.3d 369, 377-78 (4th Cir. 1995)).  Plaintiff neither addressed the issue of pretext in his response to Defendant's Motion for Summary Judgment nor presented evidence of pretext during the hearing.[3]  In *Anderson v. Westinghouse Savannah River Co.*, the United States Court of Appeals for the Fourth Circuit

---

[3]In direct response to a question from the Court, counsel for Plaintiff advised the Court that Plaintiff had no direct evidence that Chief Justice's reasons for not promoting Plaintiff were pretextual. The court cannot find circumstantial evidence of pretextual discrimination in Plaintiff's theory of "taint" based on Lt. Day's alleged discrimination.

affirmed the district court's grant of summary judgment because the plaintiff had not shown "any evidence which suggests that [the defendant's] reason was a pretext or from which a jury could infer pretext." 406 F.3d 248, 273 (4th Cir. 2005).  The Court finds that Plaintiff has failed to provide any evidence which suggests Defendant's legitimate reasons for not promoting Plaintiff were a pretext for discrimination or retaliation.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**.

## IV.  CONCLUSION

Based on the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Defendant's Motion in Limine is **DISMISSED** as **MOOT**.

The Court **DIRECTS** the Clerk to send copies of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**


_____/s/_____
RAYMOND A. JACKSON
UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
December 19, 2005

11